## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| OHIO DEMOCRATIC PARTY, | CASE NO. 1:16-cv-02645-JG |
| Plaintiff, | JUDGE JAMES S. GWIN |
| v. | |
| OHIO REPUBLICAN PARTY, et al. | |
| Defendants. | |

### DEFENDANT OHIO REPUBLICAN PARTY'S
### MOTION TO DISMISS AND OBJECTION TO PROPOSED ORDER

Now comes Defendant Ohio Republican Party ("ORP"), by and through counsel, and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully moves the Court for an order dismissing it from this action. This motion also responds to the questions posed by the Court on November 1, 2016. This motion is supported by the attached memorandum in support.

       */s/ Christopher M. Ernst*
Maria Armstrong (0038973)
BRICKER & ECKLER LLP
100 S. Third Street
Columbus, Ohio 43215
Telephone: 614-227-2300
Facsimile: 614-227-2390
Email: marmstrong@bricker.com

and

Christopher M Ernst (0056159)
BRICKER & ECKLER LLP
1001 Lakeside Avenue East, Suite 1350
Cleveland, Ohio 44114
Telephone: 216-523-5405
Facsimile: 216-523-7071
Email: cernst@bricker.com
*Counsel for Defendant,*
*Ohio Republican Party*

**MEMORANDUM IN SUPPORT**

**I.  INTRODUCTION**

Now comes Defendant Ohio Republican Party ("ORP") and files its objections to an order by this Court as against the ORP "limiting voter intimidation or . . . limiting people at polling locations who are not authorized poll watchers or outside the polling stations." (Docket Notation Order, Nov. 1, 2016). Despite its length, the Complaint does not contain one single factual assertion that the ORP has done anything to intimidate voters. Simply put, the Complaint fails to state a claim as against the ORP. Accordingly, the ORP hereby moves this Court, pursuant to Fed. R. Civ. P. 12(b)(6), to dismiss the ORP with prejudice from this litigation.

For the same reasons, and because there have been no allegations that the ORP has engaged or plans to engage in any wrongdoing whatsoever, the ORP objects to any Order requiring it to comply with Ohio law. Ohio law already regulates all of the procedures that Plaintiff raises as alleged concerns and already prohibits the activity Plaintiff seeks to have regulated by this Court. The ORP has not violated these laws, has no intention of violating them, and is not even alleged to have violated these laws by Plaintiff. As such, any Order as against the ORP is not warranted.

**II.  STANDARD FOR 12(b)(6) MOTION TO DISMISS**

To survive a motion to dismiss, a complaint must plead sufficient facts to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard is not "akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). A plaintiff is obligated to provide factual allegations that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

10846605v3

Additionally, "a plaintiff's obligation to provide the ground of his entitlement to relief requires more than labels and conclusions." *Id*. In *Iqbal*, the United States Supreme Court reaffirmed the requirement that a complaint must contain allegations of fact:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."…A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.
>
> …Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.

*Iqbal*, 556 U.S. at 678.

The court does not accept the "bare assertion of legal conclusions." *Columbia Nat. Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995). Nor does the court accept "unwarranted factual inferences." *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

Applying these familiar standards, Plaintiff fails to recite the required elements for each of their claims. Worse, the Complaint is completely devoid of factual allegations as against the ORP, and instead is replete with rote, conclusory recitals that fail to meet even the most generous pleading standard.

### III. ARGUMENT

#### A. **Plaintiff Fails to Allege Sufficient Facts That the ORP Violated 42 USC § 1985(3).**

Count I of the Plaintiff's Complaint fails to provide adequate allegations of fact to support its claim that the ORP has violated 42 USC § 1985(3), the "Ku Klux Klan Act". Courts are prohibited from accepting "bare assertions of legal conclusions," *Columbia Nat. Res.*, 58 F.3d at 1109, and "unwarranted factual inferences," *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987). However, Count I of Plaintiff's Complaint is exactly that—a bare assertion of

10846605v3

legal conclusions based on unwarranted factual inferences or on no factual basis whatsoever. It is telling that Plaintiff does not include one single statement, quote, media article, or allegation supporting the Plaintiff's baseless accusation that the ORP that has violated 42 USC § 1985(3). No such indicia exist and the assertion as against the ORP is, frankly, ridiculous and offensive.

A plaintiff must prove four elements to succeed under 42 USC § 1985(3): "(1) a conspiracy; (2) for purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States."

Plaintiff fails to plead any facts that support their legal conclusion that the ORP is "providing financial, personnel, and other organizational support to the voter intimidation efforts" in violation of the Act. (Compl. at ¶ 75.) Plaintiff fails to plead any facts that support their legal conclusion that the ORP is engaged in a conspiracy, let alone a conspiracy for the purposes of depriving any persons or class of persons equal protection of the law. Moreover, Plaintiff offers nothing but unwarranted factual inferences to support its conclusion that "voters will be subjected to intimidation, threats and perhaps even force at the hands of vigilante 'poll watchers' and 'ballot integrity' volunteers on Election Day…" (Compl. at ¶ 76.)

Without any factual support or allegation, Plaintiff simply lists the ORP and other Defendants in various places throughout the Complaint vaguely suggesting some "coordinated campaign of vigilante intimidation." (Compl. at ¶ 5.) Plaintiff's thread bare allegation that the ORP has violated 42 USC § 1985(3) is unsupported by factual allegations, as required by *Twombly*. For these reasons, the Court should dismiss Count I of the Complaint.

**B.     Plaintiff Fails to Allege Sufficient Facts That the ORP Violated 52 U.S.C. § 10307(b)**

In Count II of Plaintiff's Complaint, Plaintiff asserts that the ORP "provided financial, personnel, and organizational support…to organize people to engage in intimidation efforts in Ohio." (Compl. at ¶ 80.) The Complaint also alleges that the ORP maintained a planned course of voter intimidation that constituted a violation of 52 U.S.C. § 10307(b). (Compl. at ¶ 81.) Again, the Complaint is completely bare of any factual support for this bald assertion. Once again, Plaintiff's failure to include such support is not surprising as no such facts exist.

Plaintiff's Complaint does not "contain sufficient factual allegations to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 570. Plaintiff's Complaint contains no allegations of fact to support the contention that the ORP provided support to organize people to engage in voter intimidation efforts in Ohio. Moreover, Plaintiff's Complaint contains no allegations to support the claim that the ORP had a "planned course of intimidation." (Compl. at ¶ 81.) Plaintiff's claim that the ORP violated 52 U.S.C. § 10307(b) is nothing more than a bare assertion of legal conclusion that is unsupported by any factual allegation.

Plaintiff's Complaint does not allege standing under the Voting Rights Act nor does the Complaint contain any facts giving Plaintiff standing under the Voting Rights Act. For a plaintiff to demonstrate standing under the Voting Rights Act he must prove that:

> (1) he has personally suffered or will suffer some distinct injury-in-fact as a result of defendant's putatively illegal conduct; (2) the injury can be traced with some degree of causal certainty to defendant's conduct; (3) the injury is likely to be redressed by the requested relief; (4) the plaintiff must assert his own legal rights and interests, not those of a third party; (5) the injury must consist of more than a generalized grievance that is shared by many; and (6) the plaintiff's complaint must fall within the zone of interests to be regulated or protected by the rule of law in question.

*Newman v. Voinovich*, 789 F. Supp. 1410, 1416 (S.D. Ohio 1992) (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471-77 (1982).

Moreover, when a plaintiff is seeking injunctive relief, as is the case here, "he must establish that he personally faces a realistic, immediate, and non-speculative threat of being prospectively subjected to or harmed by the particular conduct at issue." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).

The Plaintiff has failed to plead facts that establish standing under the Voting Rights Act and have failed to establish that plaintiff personally faces a realistic, immediate, and non-speculative threat of being prospectively subjected to or harmed by the ORP.

Moreover, Plaintiff's Complaint contains a series of legal conclusions, and no substantial facts to support each of the claims the Complaint makes. As such, Plaintiff has failed to plead facts to support each and every claim Plaintiff makes, and, consequently, has failed to state claims upon which relief can be granted.

### C. **Plaintiff's claims are not ripe for review and should be dismissed.**

Plaintiff's claims are likewise not ripe for adjudication. Ripeness is a question of timing designed to prevent courts from entangling themselves in abstract disagreements that have not, and may never, come to pass. *Regional Rail Reorg. Act Cases*, 419 U.S. 102, 140, 95 S. Ct. 335, 42 L. Ed. 2d 320 (1974); *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967). A basic tenet of the doctrine of ripeness is that "a matter is considered premature for judicial review when the alleged injury is speculative or may never occur." *Kallstrom v. City of Columbus,* 136 F.3d 1055, 1068 (6th Cir. 1998).

10846605v3

Ripeness goes to the subject matter jurisdiction of the court; a court has no jurisdiction to adjudicate an unripe claim. *Bigelow v. Michigan Dep't of Natural Res.*, 970 F.2d 154, 160 (6th Cir. 1992).  Under well-established Sixth Circuit precedent, in ascertaining whether a claim is ripe, a district court examines (1) the likelihood that the harm alleged will ever come to pass; (2) whether the factual record is sufficiently developed to allow for adjudication; and, (3) hardship to the parties if judicial review is denied. *Adult Video Ass'n v. United States*, 71 F.3d 563, 568 (6th Cir. 1995).  The Sixth Circuit pays "particular attention" to the first factor—whether the controversy is based on future events that may not occur as anticipated, or may not occur at all. *United Steelworkers of Am. Local 2116 v. Cyclops Corp.*, 860 F.2d 189, 194-95 (6th Cir. 1988). Ultimately, it is the burden of the plaintiff to "demonstrate a realistic danger of sustaining a direct injury." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S. Ct. 2301, 2308, 60 L. Ed. 2d 895 (1979).

Plaintiff's Complaint is a hornbook example of an unripe claim.  There is no allegation that any of the imagined harms will come to pass, or will come to pass as Plaintiff has described them.  The Complaint begins by citing statements and speeches by Donald Trump and Mike Pence about concerns they have about the integrity of the vote on Election Day. (Compl. ¶¶ 21-33.)  The Complaint then goes on to discuss the activities of Roger Stone, suggesting he plans to engage in "exit polling" in Democratic-leaning cities. (Compl. ¶¶ 34-40.)  Plaintiff then claims these actions could result in voters being harassed and intimidated on Election Day. (Compl. ¶¶ 45-46.)  All of these allegations are future-focused—hypothesizing possible injuries that may result from possible misconduct.  Maybe.  Not only is the future claim speculative, but there is no allegation of any past similar conduct.  Nor are there any allegations of any statements or actions undertaken by the ORP in furtherance of this scheme.  The Complaint does not identify any

10846605v3

instance of a specific person or organization having harassed or intimidated any voter. And the lack of such allegation is noteworthy because early voting started in Ohio three weeks ago. Tens of thousands of voters have already voted in Ohio. Plaintiff does not identify a single instance of voter intimidation or harassment during that time.

In fact, Plaintiff has publicly admitted that there have been no instances of voter intimidation or harassment. ("Mr. Pepper said he had not seen any instances of voter intimidation yet, but he hoped the lawsuit will ensure federal election laws are followed." Zack Lemon, Democrats sue in Ohio federal court to block Republican poll-watching efforts, TOLEDO BLADE, Oct. 31, 2016, http://www.toledoblade.com/Politics/2016/10/31/Democrats-sue-in-Toledo-federal-court-to-block-Republican-poll-watching-efforts.html; "Ohio Democratic Party Chairman David Pepper said Monday that the lawsuit was filed to 'be safe and take action' should anything illegal occur." Eric Heisig, *Ohio Democratic Party sues state Republicans, Trump campaign, alleges voter intimidation tactics*, CLEVELAND PLAIN DEALER, Oct. 31, 3016, http://www.cleveland.com/court-justice/index.ssf /2016/10/ohio_democratic_party_sues_sta.html.)

These allegations do not meet any of the factors set forth by the Sixth Circuit. The dearth of voter harassment and intimidation during early voting creates a question—if not outright doubt—that any of the claimed conduct or harm will "ever come to pass." *Adult Video*, supra. Moreover, the record is wholly undeveloped. Not only are there no ***allegations*** of improper action, but there is no ***evidence*** of such action. No evidence is attached to the Complaint. And there has been no motion for immediate injunctive relief filed by Plaintiff—likely because there is no evidence to support such a motion.

Moreover, there is no hardship to the Plaintiff if judicial review is denied at this stage. If the perceived conduct indeed comes to pass, voters can bring an appropriate suit at that time.

- 9 -

And that suit can be litigated based upon real facts that actually happened rather than hyperbole and speculation. Ohio has a robust statute prohibiting abusive election practices and providing for every voter with the full panoply of remedies. *See* Ohio Rev. Code § 3501.90 (prohibiting obstructing an election to a polling place; prohibiting obstructing, intimidating, or interfering with an elector in a polling place; prohibiting participation in any riot, violence, tumult, or disorder at a polling place). If the conduct Plaintiff is concerned about actually comes to pass, it will have the opportunity to remedy those issues as soon as they arise.

> **D. Plaintiff has failed to plead any grounds for an Order as against the Ohio Republican Party and no such Order should issue.**

The ORP agrees with Defendant Trump for President, Inc. that the Complaint fails to meet the most fundamental requirements for seeking emergency injunctive relief. The law in this Circuit is well settled. A party seeking such relief "must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *O'Toole v. O'Connor*, 802 F.3d 783, 788 (6th Cir. Ohio 2015), citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) Ed. 2d 249 (2008) Courts recognize that "a temporary restraining order is an extraordinary remedy whose purpose is to preserve the status quo." *Ohio Republican Party v. Brunner*, No. 2:08-cv-00913, 2008 U.S. Dist. LEXIS 86065, at *8 (S.D. Ohio 2008).

The Complaint does not allege any of these elements with sufficiency, but the element regarding the balance of equities is particularly pronounced as applied to the ORP. Unlike the other named Defendants, the ORP has a historic and ongoing role in Ohio elections, an obligation to numerous candidates, and a statutory obligation under Ohio law as to elections.

Similarly, the public interest is also being harmed by any unilateral and unfounded restraint on a political party's ability to provide the necessary check and balance that is fundamental to our electoral system. It is axiomatic to our system of government that political parties be accorded a level playing field. "There can be little doubt that the emergence of a strong and stable two-party system in this country has contributed enormously to sound and effective government." *Davis v. Bandemer*, 478 U.S. 109, 144-145, 92 L. Ed. 2d 85, 106 S. Ct. 2797 (1986) (O'Connor, J., concurring). See also, *Timmons v Twin Cities Area New Party*, 520 U.S. 351, 117 S. Ct. 1364, 137 L. Ed. 2d 589 (1997).

Plaintiff has presented this Court with nothing to indicate what activity by the ORP the Plaintiff seeks to enjoin. Not one single paragraph alleges that the ORP has done or said anything that might constitute voter harassment or intimidation and Plaintiff's vague and sweeping prayers for relief do nothing to shed light on the activity it seeks to enjoin as to the ORP. Absent any allegation of wrongdoing on the ORP's part, let alone the requisite showing of a likelihood of success, it would be error for this Court to issue an Order preventing the ORP from engaging in activity which is not only permitted by Ohio law, but is constitutionally protected activity.

Publicly, Plaintiff states that it is not contesting the ORP's proper appointment of observers and has no evidence to suggest that anything else is even contemplated. ("Democrats have asked the court to declare the exit-polling initiatives organized by the Trump campaign and Mr. Stone contrary to law, and to restrain the Ohio Republican Party, the Trump campaign, and Mr. Stone's organization from monitoring polls, unless individuals meet the legal requirements of an election observer." Zack Lemon, *Ohio Democrats file lawsuit to head off voter intimidation*, TOLEDO BLADE, Nov. 1, 2016, http://www.toledoblade.com/Politics/2016/11/01/Ohio-Democrats-file-lawsuit-to-head-off-voter-intimidation-Republicans-plan-response-dismiss-as-

10846605v3

theatrics.html.)   Yet the Complaint asks this Court to issue a sweeping order against the ORP that inexplicably goes much farther.  It would be error for this Court to issue such a sweeping, prospective order against the ORP.

Plaintiff asks this Court to temporarily restrain and enjoin the ORP from "monitoring polling places, or permitting, encouraging, or assisting individuals to monitor polling places. . . ." (Compl. Prayer for Relief (f)).  Yet Ohio Rev. Code § 3505.21(B) specifically permits *both* the Plaintiff and the ORP to appoint observers to monitor the casting of ballots:  "[A]ny political party supporting candidates to be voted upon at such election . . . may appoint to the board of elections or to any of the precincts in the county or city one person, a qualified elector, who shall serve as observer for such party . . . during the casting of the ballots and during the counting of the ballots."

Ohio law sets forth a comprehensive scheme of appointing observers that applies to both political parties equally and furthers a safe, orderly process that includes a bi-partisan system of checks and balances.  Observer qualifications are specified and observer activity is highly regulated.  Ohio Rev. Code § 3505.21.  All observers are required to swear an oath to "faithfully and impartially discharge the duties as an official observer," and mandates that "precinct election officials shall protect such observers in all of the rights and privileges granted to them by Title XXXV of the Revised Code."  *Id.*  Plaintiff provides no allegation that the ORP has violation these regulations nor presents any argument as to why Ohio's statutory scheme is somehow insufficient to protect the interests that both the ORP and Plaintiff share.

Plaintiff also asks this Court to restrain and enjoin the ORP from "gathering or loitering. . .around any polling place, or within ten (10) feet of a voter standing in line extending outside of that buffer zone. . ." (Compl. Prayer for Relief (g)). Again Plaintiff fails to include any allegation

or assert any fact as to what activity the ORP has engaged in that might somehow violate this vague demand. Moreover, the courts in this circuit repeatedly recognize that engaging with voters outside the buffer zone or leaving a polling place after voting fall within is a well-established constitutionally protected First Amendment Right. *See*, *Anderson v. Spear*, 356 F.3d 651, 663 (6th Cir. 2004) (striking down as overbroad a 500 foot zone in which campaigning was prohibited); *ABC v. Blackwell*, 479 F. Supp. 2d 719, (S.D. Ohio 2006) (holding that prohibiting exit interviews within the buffer zone violates the First Amendment). The Complaint falls woefully short of establishing a basis for impinging on a constitutional right in this manner.

Finally, Plaintiff asks this Court to restrain and enjoin the ORP from "monitoring polling places". (Compl. Prayer for Relief (f)). Yet Ohio law allows "*any person*" to "enter the polling place for the sole purpose of reviewing the official registration list" to identify registered voters in the precinct and whether or not those voters have voted. Ohio Rev. Code § 3503.23(C), (emphasis added); s*ee also* Ohio Rev. Code § 3503.23(B) (requiring precinct election officials to "conspicuously post and display . . . the registration list of voters in that precinct" and "[a]t 11 a.m. and 4 p.m. place a mark, on the official registration list posted at the polling place, before the name of those registered voters who have voted"). Such activity is critical to the ORP's get-out-the-vote efforts on behalf of *all* of its candidates.

Plaintiff makes no allegation as against the ORP that any such harassment has occurred or is planned. On the contrary, Plaintiff's Chairman David Pepper "said he hasn't heard of any problems this year."

Mr. Pepper continued, speaking on behalf of the Plaintiff, that "we are very confident that people will be able to vote free of intimidation and harassment." Jessie Balmert, Dems sue Trump, GOP, saying they want to prevent voter intimidation, CINCINNATI ENQUIRER, Oct. 31,

10846605v3

2016, http://www.cincinnati.com/story/news/politics/elections/2016/10/31/dems-sue-trump-gop-prevent-voter-intimidation/93065140/.

As part of the effort to uphold and sustain the integrity of Ohio elections, Ohio retains bipartisan election officials and Boards of Elections contain two Republican and two Democratic administrators. With these bipartisan safeguards in place, Democratic members of the Boards of Elections and various other Democratic staff members would certainly have reported any sort of rampant voter intimidation if it in fact existed. In reality, these bipartisan efforts are working. As evidenced by Plaintiff's Chairman's comments above, both sides agree that there have been no known reports of problems in early absentee voting.

The courts in this circuit have frequently required a much higher showing to be entitled to the type of emergency relief that Plaintiff seeks.  For example, in *Crookston v. Johnson*, No. 16-2490, 2016 U.S. App. LEXIS 19494 (6th Cir. 2016), issued less than a week ago, the Sixth Circuit Court of Appeals granted a stay of a preliminary injunction where the plaintiff delayed in bringing a last-minute election challenge, and offered no proof to support his alleged harm.  In that case, much like the case at hand, the plaintiff cited to newspaper articles in support of his contention that the Michigan Secretary of State might enforce that state's laws to prohibit him from taking a "ballot selfie" in the upcoming election. But the plaintiff's case faltered because he offered "no proof that the [Defendant] was considering any such changes or that anyone asked her to make them." *Id.* at 5.  Similarly, Plaintiff in the instant case offers no proof (in fact, does not even allege) that the ORP is considering or has been asked to engage in voter harassment or intimidation. "[C]ourts will not disrupt imminent elections absent a powerful reason for doing so." *Id.* at 4; *Purcell v. Gon*zalez, 549 U.S. 1, 5-6, 127 S. Ct. 5, 166 L. Ed. 2d 1 (2006) (per curiam).

In the absence of even an allegation of any threat or intimidation by the ORP, let alone some supporting evidence, enjoining the ORP from engaging in some vague and unspecified activity, while Plaintiff may freely continue engaging in the same activity, violates the fundamental tenets of Ohio election laws, which are specifically designed to retain a balance between the parties. An Order preventing the ORP from engaging in some unspecified and undefined activity is not only misplaced, it upsets the fundamental principles of a fair and balanced electoral system.

## IV. CONCLUSION

Defendant Ohio Republican Party respectfully requests that the Court dismiss the claims against it, deny the Plaintiff's request for deny the Plaintiff's request for a temporary restraining order and injunctive relief, and enter judgment in its favor.

*/s/ Christopher M. Ernst*
Maria Armstrong (0038973)
BRICKER & ECKLER LLP
100 S. Third Street
Columbus, Ohio 43215
Telephone: 614-227-2300
Facsimile: 614-227-2390
Email: marmstrong@bricker.com

and

Christopher M Ernst (0056159)
BRICKER & ECKLER LLP
1001 Lakeside Avenue East, Suite 1350
Cleveland, Ohio 44114
Telephone: 216-523-5405
Facsimile: 216-523-7071
Email: cernst@bricker.com
*Counsel for Defendant,*
*Ohio Republican Party*

10846605v3

## **CERTIFICATION AS TO PAGE LENGTH**

Pursuant to Local Civ. R. 7.1(f), the foregoing document is no greater than twenty (20) pages, which is the page limitation for standard-track cases.

> */s/ Christopher M. Ernst*
> Christopher M. Ernst (0056159)
> *Counsel for Defendant,*
> *Ohio Republican Party*

10846605v3

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on November 2, 2016, the foregoing document was filed electronically. Notice of the filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

*/s/ Christopher M. Ernst*
Christopher M. Ernst (0056159)
*Counsel for Defendant,*
*Ohio Republican Party*