**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

OHIO DEMOCRATIC PARTY,             CASE NO. 1:16-cv-02645-JG

        Plaintiff,                 JUDGE JAMES S. GWIN

v.

OHIO REPUBLICAN PARTY, et al.

        Defendants.

**DEFENDANT OHIO REPUBLICAN PARTY'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

## I.    INTRODUCTION

Plaintiff Ohio Democratic Party's ("ODP" or "Plaintiff") Complaint and its Motion for Temporary Restraining Order and/or Preliminary Injunction (the "Motion") are not legitimate demands for legal relief under any fair assessment; instead, they are a transparent and cynical effort to conscript this Court into serving as a surrogate for their political messaging on the eve of a national election. The Court should reject Plaintiff's misuse of the judicial process for political ends. There is absolutely no allegation—let alone any evidence—of any conduct or intention on the part of Defendant the Ohio Republic Party ("ORP") to engage in any unlawful

10850899v2

activity whatsoever.  The Court should dismiss ORP from this action and deny the Motion as to
ORP in its entirety.

Even a cursory examination of the facts alleged and of the "evidence" submitted reveals
that the only activities in which ORP is actually engaged—supporting political candidates,
training poll observers, *etc.*—are exactly the same legal and proper activities in which Plaintiff
itself is engaged, and indeed, in which both parties are engaged in this election and in every
election.  But Plaintiff would have this Court set a legally errant and practically dangerous
precedent by effectively prohibiting state parties from engaging in perfectly legal election-day
activities and candidate support initiatives merely because a candidate—or even a private citizen
supporting a candidate—has made statements to which the opposing party chooses to ascribe
sinister motives.

Unless this Court is prepared to issue injunctions against state political parties each time
questionable content issues forth from the Twitter account of a sympathetic voter or the lips of a
candidate, then the Plaintiff's request for a TRO must be denied in its entirety as to ORP.

## II.    LEGAL STANDARD

Requests for emergency injunctions are subject to a high standard and rarely granted.
Courts consider: "(1) whether the movant has a 'strong' likelihood of success on the merits; (2)
whether the movant would otherwise suffer irreparable injury; (3) whether issuance of a
[temporary restraining order] would cause substantial harm to others; and (4) whether the public
interest would be served by issuance" of a temporary restraining order. *Summit Cty. Democratic
Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 550 (6th Cir. 2004) (quoting *Leary v.
Daeschner*, 228 F.3d 729, 736 (6th Cir. 2009)).  The same standard applies to a request for a
temporary restraining order.  *Rios v. Blackwell*, 345 F. Supp. 2d 833, 835 (N.D. Ohio 2004).  The

2

Sixth Circuit has said that these factors "are to be balanced against one another." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th. Cir. 2000).

The standard to obtain an injunction is demanding because an injunction is an "extraordinary remedy." *Winter*, 555 U.S. at 22. A plaintiff must establish a "strong" likelihood of success, *Jolivette v. Husted*, 694 F.3d 760, 765 (6th Cir. 2012) (quotation omitted); a mere "possib[ility]" of success does not suffice, *Summit Cnty. Democratic Cent. & Exec. Comm. v. Blackwell*, 388 F.3d 547, 551 (6th Cir. 2004). Similarly, the plaintiff must show a likely, not just a possible, irreparable injury. *Winter*, 555 U.S. at 22. Moreover, a "sweeping injunction to obey the law" is open to objection and it is a court's duty to avoid them. *Swift & Co. v. United States,* 196 U.S. 375, 401 (1905). *See also, Perez v. Ohio Bell Tel. Co.*, 2016 U.S. App. LEXIS 13062, *19-20 (Jul. 14, 2016).

Every single factor in the TRO/PI analysis weighs heavily against the issuance of any injunction against ORP. The Plaintiff's Motion should be denied.

## IV.   LEGAL ARGUMENT

### A.   Plaintiff does not have a strong likelihood of success on the merits.

Plaintiff has not shown any likelihood of success vis-a-vis his allegations against the ORP. In fact, a careful review of both the Complaint and the Memorandum of Law in Support of Temporary Restraining Order and/or Preliminary Injunction reveals an utter dearth of allegations (provable or not) directly pertaining to the conduct of the ORP. Instead, the Plaintiff has set forth copious allegations as to the alleged conduct of Mr. Trump, Governor Pence and Roger J. Stone, Jr. These allegations are supported by a variety of reports of news media. In order to inculpate the ORP, Plaintiff attempts to lump the ORP into the mix by alleging that the Trump campaign and the ORP "coordinate closely" or that the ORP provides tacit assistance. However,

3

the Plaintiff does not make one direct allegation against the ORP which sets forth any act of voter intimidation whatsoever.

The Plaintiff also fails to allege any specifics as to how ORP allegedly coordinates or tacitly assists. All of the allegations set forth pertain to the conduct of the Trump campaign and/or Mr. Stone. As a result, while one might be able to argue that the Plaintiff has sufficiently pleaded a likelihood of success against the Trump campaign and/or Mr. Stone (a point that the ORP does not concede), the Plaintiff has failed to do the same as pertains to the ORP. Regardless of whether ODP has alleged or demonstrated any likelihood of success as to any claim or any party named in this action, it is unequivocally the case that it cannot show a likelihood of success against ORP as to any of the claims alleged.

## 1. Plaintiff cannot show that ORP is acting in violation of 42 U.S.C. 1985(3)

Plaintiff cannot succeed on the merits of its 42 U.S.C. § 1985(3) claim against ORP. Plaintiff has neither alleged facts in the Complaint that the ORP violated 42 U.S.C. § 1985(3), nor provided any evidence in support of its Motion for TRO that would suggest it has any chance of successfully prosecuting a viable 42 U.S.C. § 1985(3) claim against the ORP.

First and foremost, Plaintiff cannot succeed on the merits for the reasons stated fully in Defendant's Ohio Republican Party's Motion to Dismiss and Objection to Proposed Order, which ORP hereby incorporates by reference in full. Plaintiff's inability even to plead a viable claim against ORP demonstrates that Plaintiff is not likely to—indeed, cannot—succeed on the merits. This alone justifies denial of the Motion for TRO.

Second, Plaintiff has provided no evidence that the ORP has engaged in any of the activity set forth in 42 U.S.C. § 1985(3), *i.e.*, "(1) a conspiracy; (2) for purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or

4

of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Dohner v. Neff*, 240 F. Supp. 2d 692 (2002) (citing *United Brotherhood Carpenters, Local, 610 v. Scott*, 463 U.S. 825, 828-29 (1983).

Indeed, Plaintiff's Exhibits in support of the Motion for TRO barely mention the ORP at all, and the few times the ORP is referred to in Plaintiff's Exhibits does nothing to support any contention that the illegal activity prohibited by 42 U.S.C. § 1985(3) has occurred. Plaintiff is not likely to succeed on a claim that does not even allege wrongful conduct on the part of the ORP.

### 2.    Plaintiff cannot show that ORP is acting in violation of 52 U.S.C. § 10307(b)

Plaintiff also cannot succeed on its claims that the ORP has violated Section 11(b) of the Voting Rights Act by sending poll observers to polling locations. As an initial matter, Plaintiff's claim fails as a matter of law as ORP argued in its Motion to Dismiss and Objection to Proposed Order, which ORP hereby incorporates by reference in full. Once again, ODP's inability even to plead a viable claim against ORP demonstrates that Plaintiff is not likely to—indeed, cannot—succeed on the merits. This alone justifies denial of the Motion.

Further, as noted by Plaintiff, Section 11(b) of the Voting Rights Act prohibits actions, whether taken under color of law or otherwise, that:

> intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any persons to vote or attempt to vote, or intimidate, threaten, or coerce any person for exercising any powers or duties under section 3(a), 6, 8, 9, 10, or 12(e)

5

52 U.S.C. § 10307(b). To succeed on a Section 11(b) claim, therefore, a plaintiff "must show both an act of intimidation or attempt to intimidate, and that the act was done with the specific intent to intimidate or attempt to intimidate." *Parson v. Alcorn*, 157 F. Supp. 3d 479, 498 (E.D. Va. 2016) (citing *Olagues v. Russoniello*, 770 F.2d 791, 804 (9th Cir. 1985); *United States v. McLeod*, 385 F.2d 734, 740-41 (5th Cir. 1967)). Here, Plaintiff's Memorandum supporting the request for injunctive relief fails both elements: (1) Plaintiff did not and cannot show that the ORP acted to intimidate or threaten voters, and (2) Plaintiff did not and cannot show that the ORP had the specific intent to intimidate. In fact, Plaintiff's Memorandum in Support is utterly devoid of any facts whatsoever that show the ORP acted to intimidate or threaten voters.

Courts that have decided Section 11(b) claims have continuously held that a successful Section 11(b) claim must contain evidence of coercive action taken for the purpose of interfering with the right to vote. *See, e.g.*, *Bershatsky v. Levin*, 99 F.3d 555, 557 (2d Cir. 1996) (holding that "a call to jury duty, to fulfill one's responsibility as a citizen does not constitute coercion or intimidation within the meaning of [Section 11(b)]"). Here, Plaintiff has failed to provide any evidence to show that the ORP is taking coercive action for the purpose of interfering with the right to vote. In fact, Plaintiff does not even *allege* any facts, cite to any media articles, or paraphrase any statements attributable to the ORP that come near to any actionable basis for a Section 11(b) claim.

Contrary to Plaintiff's contentions, Section 11(b) does not prohibit registered political parties from sending poll observers to the polls. *Cf. Spencer v. Pugh*, 543 U.S. 1301, 1302-03 (2004) (denying applications to vacate stays) ("Moreover, I have faith that the elected officials and numerous election volunteers on the ground will carry out their responsibilities in a way that will enable qualified voters to cast their ballots".). In fact, the Ohio legislature has *specifically*

10850899v2

*permitted* the appointment of poll observers by political parties.  O.R.C. § 3505.21.  ("[A]ny political party supporting candidates to be voted upon at [any primary, special, or general election] may appoint . . . one person, a qualified elector, who shall serve as an observer for such party or such candidates during the casting of the ballots and during the counting of the ballots.").

Moreover, the Ohio Supreme Court has unambiguously approved the use of poll observers, as an "important" act that secures "future participation in the democratic process." *State ex rel. Stokes v. Brunner*, 120 Ohio St.3d 250, 2008-Ohio-5392, 898 N.E.2d 23, ¶ 30 ("[p]oll observers play an important role in assuring the public that election processes are open and transparent, affecting public trust of the process, and thus, the potential for future participation in the democratic process") (quoting Secretary of State Directive 2008-29 (Feb. 25, 2008)).  Any ruling that the appointment of poll observers by a political party, conducted precisely as contemplated by the  Ohio Revised Code and the Ohio Supreme Court, constitutes an act of intimidation sets a dangerous precedent, and one that is completely unfounded.

For an action to be an intimidating or coercive action, the action must be of "the kind of threat or intimidation that was envisioned or covered by Section 11(b)." *United States v. Brown*, 494 F. Supp. 2d 440, 477 n.56 (S.D. Miss. 2007) .  The ORP's use of polling observers is not the kind of threat of intimidation that was contemplated by Section 11(b).  Rather, as already demonstrated, the use of polling observers is a state-sanctioned activity that actually *protects* the democratic process. Plaintiff makes no allegation and provides no facts as against the ORP to support any of the required elements of a valid Section 11(b) claim.   Instead, the ORP is, as it has for many years, engaged in the exact practice that Plaintiff itself engages in: sending poll observers to ensure a fair and democratically-run election on behalf of all of its candidates.

7

Having failed to allege action by the ORP to meet either the first or the second prong of a valid Section 11(b) claim, and having failed to present any factual support for same, the Plaintiff's likelihood of success on the merits is virtually nonexistent. .

**B.**     **Denying Plaintiff's request for injunctive relief will not cause irreparable injury.**

A temporary restraining order must be denied if the plaintiff cannot show irreparable injury in the absence of the injunction. *NMS, Inc. v. Brey & Co.*, 2016 U.S. Dist. LEXIS 37853, *3 (N.D. Ohio Mar. 23, 2016) (Gwin, J.). Critically, "[t]o demonstrate irreparable harm, the plaintiffs must show that…they will suffer 'actual and imminent' harm rather than harm that is speculative or unsubstantiated." *Id.* at *3, n. 17 (quoting *Abney v. Amgen, Inc.*, 443 F.3d 540, 552 (6th Cir. 2006).

First, ODP's assertions of irreparable harm in the absence of an injunction against ORP are utterly unsubstantiated. In fact, the assertions of irreparable harm in ODP's supporting memorandum are not even specific to the conduct of any of the Defendants, let alone ORP. Rather, they are limited to general statements about the importance of voting rights generally, and declarations that the denial of voting rights, when it actually occurs, is an irreparable injury. *See*, ODP Memo, pp. 33-35.

But the substantiation of a claim of irreparable injury must be predicated on the specific conduct a plaintiff seeks to enjoin, not just on the nature of the claimed injury itself. *See, e.g., Fangman v. City of Cincinnati*, 634 F. Supp. 2d 872, 875-876 (S.D. Ohio 2008)(noting that the test is whether "irreparable harm has been suffered and will continue to suffer unless *Defendant's conduct* is enjoined…" (emphasis added)). Otherwise, a plaintiff would have no obligation to tie their requests for relief to the actual conduct of the defendants they seek to enjoin. As noted above, ODP has not identified—in the Complaint or the documents supporting its pending

8

Motion—any actual conduct of ORP to substantiate its claims, let alone that will cause irreparable harm.

Second, even apart from the complete absence of any identifiable conduct of ORP that must be stopped in order to avoid the alleged irreparable harm, the alleged harm they seek to prevent is merely speculative in any event. *See, e.g.*, ODP Memo, p. 33 ("Defendants are likely to carry out their plans") and p. 35 (Defendants'...scheme is likely to cause...harm). Of course, Plaintiff cannot establish any harm—let alone irreparable harm—with any degree of certainty when its allegations that voter intimidation conduct is imminent are based on nothing more than stray candidate statements and voter Tweets—and not one single act or statement by any member of the ORP evidencing any intent other than to abide by the law.

## C. Granting Plaintiff's request for injunctive relief will substantially harm third parties.

The ORP and the citizens of the state of Ohio have the right to engage in poll watching activities in accordance with Ohio law—activities that Ohio acknowledges are important to the democratic process. But Plaintiff is asking this Court to strip their political enemies of the right to legally and properly exercise those rights. The Court should not issue an injunction that so obviously fails to comply with Rule 65(d), and that at the same time would plainly injure third parties by preventing only Plaintiff's political adversaries from engaging in perfectly legal conduct.

According to Plaintiff, its "requested injunctive relief does *no more* than to effectuate the mandate of federal law." ODP Memo, p. 39 (emphasis added). Of course, if that were true, then it is well-established in the Sixth Circuit that such an "obey-the-law" injunction is not permissible and should be rejected as procedurally improper:

9

> We have accordingly explained that district courts "should limit
> the scope of [an] injunction to the conduct which has been found to
> have been pursued or is related to the proven unlawful conduct."
> *Howe v. City of Akron*, 801 F.3d 718, 753 (6th Cir. 2015). *See also
> CFE Racing Products, Inc. v. BMF Wheels, Inc.*, 793 F.3d 571,
> 595 (6th Cir. 2015) ("Courts must closely tailor injunctions to the
> harm that they address." (internal quotation marks omitted)). An
> injunction that does no more than prohibit any and all conduct in
> contravention of already existing law is overbroad under the terms
> of Rule 65(d).

*Perez v. Ohio Bell Tel. Co.*, 2016 U.S. App. LEXIS 13062, *19-20 (Jul. 14, 2016).  Otherwise,

Plaintiff itself should be happy to accept the issuance of the exact same injunction against itself,

since after all, it claims it is merely asking the Court to order everyone to adhere to "the mandate

of federal law" in order to protect the voting rights of Ohioans.

But, of course, Plaintiff's prayer for relief reveals itself to be much more than a simple

request that ORP and the other Defendants "obey the law."  Instead, Plaintiff is seeking to

transform allegations—speculative and unsubstantiated—that the exercise of certain poll

observation rights *might* be abused by some individuals, as a justification to obtain a court order

prohibiting even the legitimate exercise of those rights by Plaintiff's political opponents.

For example, Plaintiff's requested injunction would prohibit ORP from organizing or

training private citizens simply to ask any questions of voters, even outside of polling places.

*See*, ODP Proposed Order, p. 2, ¶¶ b, f.  Plaintiff's requested injunction would prohibit the

distribution of any literature informing persons that voter fraud is a crime and would prevent

ORP from organizing or training individuals on how to distribute literature, even in a perfectly

legal manner.  *Id.* at ¶ c.  And Plaintiff's requested injunction would prevent any and all

photographing and/or recording of voters—even when done by their consent outside of polling

locations—and would prohibit ORP from organizing or training individuals on how to do so,

even in a perfectly legal manner.  *Id.* at ¶ e.

In other words, by its own terms, Plaintiff's requested injunction would substantially harm third parties by prohibiting perfectly legal conduct and the organizing and training of individuals in how to engage in such perfectly legal conduct, in the exercise of their rights under Ohio law.  Plaintiff's request appears to be more an effort at the suppression of the legal political activity and speech of its opponents than it does the protection of the right to vote itself.  It is an unsavory irony that Plaintiff is using claims of voter suppression in an effort to cynically suppress political speech with which it disagrees.  The harm to third parties that issuing the requested injunction would cause weighs heavily in favor of denying Plaintiff's Motion.

> ### D.    Granting Plaintiff's overbroad and conclusory request for injunctive relief is not in the public interest but contrary to it.

Finally, while Plaintiff attempts to frame the final factor  as whether the public interest favors the protection of voting rights—which it surely does—that is not the question for the Court.  The question for the Court—and in particular as it relates to the relief requested against ORP—is whether there is a public interest in having this Court issue the requested injunction.  The answer is surely "no."

As it relates to ORP specifically, the question is whether the public interest would be served by issuing an injunction against ORP that is predicated on nothing more than suggestion and innuendo, and which would amount to nothing more than an Order to "obey the law," even though Plaintiff has presented absolutely no evidence whatsoever that ORP is even remotely likely to engage in any activity to which the requested injunction would ever apply.  The weakness of Plaintiff's case on the merits militates against any injunction serving the public interest.  And given the fact that Plaintiff has characterized its own request for relief as nothing more than an order to obey the law, it is unclear what actual public interest would be so served.

But even more, granting the relief requested as against ORP would be contrary to the public interest for at least two reasons: First, it would further erode the public's confidence in an independent judiciary by coopting the authority of this Court for political messaging to attack political opponents, even when no evidence exists that violations of the law have occurred. And second, it would render a nullity the important function that poll observation plays in the democratic process by hamstringing one political party from engaging in precisely the same, legal conduct as that of the Plaintiff. *See*, *State ex rel. Stokes v. Brunner*, 120 Ohio St.3d 250, 2008-Ohio-5392, 898 N.E.2d 23, ¶ 30.

## V.    CONCLUSION

For the foregoing reasons, ORP respectfully requests that the Court deny Plaintiff's Motion for a Temporary Restraining Order and/or Preliminary Injunction as to ORP, and further requests that Plaintiff's claims as to ORP be dismissed for failure to state a claim as set forth in ORP's previously filed Motion to Dismiss.

/s/ Christopher M. Ernst
Maria Armstrong (0038973)
BRICKER & ECKLER LLP
100 S. Third Street
Columbus, Ohio 43215
Telephone: 614-227-2300
Facsimile: 614-227-2390
Email: marmstrong@bricker.com

and

Christopher M Ernst (0056159)
BRICKER & ECKLER LLP
1001 Lakeside Avenue East, Suite 1350
Cleveland, Ohio  44114
Telephone: 216-523-5405
Facsimile: 216-523-7071
Email: cernst@bricker.com
*Counsel for Defendant,*
*Ohio Republican Party*

12

## CERTIFICATION AS TO PAGE LENGTH

Pursuant to Local Civ. R. 7.1(f), the foregoing document is no greater than twenty (20) pages, which is the page limitation for standard-track cases.

/s/ Christopher M. Ernst
Christopher M. Ernst (0056159)
*Counsel for Defendant,*
*Ohio Republican Party*

10850899v2